GARY M. RESTAINO
United States Attorney
District of Arizona

BRETT A. DAY
Arizona State Bar No. 027236
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Brett.Day@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-22-0503-PHX-DJH |
| Plaintiff, | |
| vs. | **RESPONSE TO PSR OBJECTION AND SENTENCING MEMORANDUM** |
| Omar Martinez., | |
| Defendant. | |

Defendant disputes the proposed application of a six-level increase under U.S.S.G. § 2K2.1(b)(1)(C) for total involvement of 29 firearms in the offense. (Dkt. 41, PSR Objection.) Defendant additionally disputes the proposed application of a four-level increase under U.S.S.G. § 2K2.1(b)(6)(A) for knowledge the firearms would be transported out of the United States.

As it relates to the total number of firearms, Defendant argues that 27 of the 29 purchased firearms were legal purchases. In particular, defendant argues that seven of the nine firearms purchased during the undercover operation (Count 2) were legal purchases. Defendant further argues that "17" firearms identified in Counts 3 – 19 and Counts 20 – 36 should not be counted because they neither involved a false statement, nor were part of a straw purchase.[1]

---

[1] Defendant identifies a total "17" firearms for Counts 3 – 36. The total number of

The government agrees in part and opposes in part defendant's objections. Specifically, government agrees that seven of the nine firearms from the undercover operation (Count 2) would have otherwise been legal as a private party sale. The government opposes the objection to the inclusion of the 20 firearms from Counts 3 – 36, as well as the enhancement for knowledge the firearms would be transported out of the United States.

Furthermore, after this case was indicted on May 17, 2022, Agents learned of an additional 36 firearms defendant purchased over the same time-period of the conduct charged in the indictment. (Bates 285, ROI 22). Although these transactions remain uncharged, the additional 36 guns should be included in the total calculation under U.S.S.G. § 1B.3(a)(1)(A) and § 1B.3(a)(2) as detailed below. As such, the total number of firearms should be 58, still providing for a six-level enhancement under U.S.S.G. § 2K2(b)(1)(C).

The government respectfully requests that this court overrule the objection in part and impose the six-level increase under U.S.S.G. § 2K2(b)(1)(B). Defendant's Adjusted Offense Level remains a 28. After acceptance of Responsibility, the Total Offense Level is 25 with a guidelines range of 57 – 71 at CHC I, as calculated in the PSR.

### I. FACTS.

The government adopts the facts as set forth in the PSR. (Dkt. 40), but supplements the following facts for the purpose of this response.

On June 18, 2021, Agents attempted to locate Defendant by visiting 121 W. Harding Ave, Coolidge, Arizona. (Bates 089, ROI 2). Martinez had provided the Harding address as his residential address on each ATF Form 4473 during the purchase of the firearms in Counts 3 – 36.

---

firearms for these counts is 20. (Bates 001 – 003, ROI 1) Nine firearms from the undercover purchase (Count 2), and 20 firearms for Counts 3 – 36, for a total of 29 firearms identified in the PSR. The 20 firearms for Counts 3 – 19 are the same firearms for Counts 20 – 36. The two different charges simply represent two different false statements during the acquisition of the 20 firearms.

Agents knocked on the door and spoke with Anita Martinez who identified herself as Defendant's aunt. Agents asked to speak with Defendant and Ms. Martinez responded that Defendant was "not at home." Ms. Martinez stated that Defendant "partied a lot and frequently came and went from the residence." When asked if Defendant resided at the residence, Ms. Martinez stated that Defendant "would sometimes stay the night." Ms. Martinez stated that Defendant did not pay rent at the residence, did not have a bedroom in the residence, and had no personal belongings in the residence. Ms. Martinez stated that Defendant would stay at various locations and that he would just show up at her house. Agents left their business card with Ms. Martinez in hopes of making contact with Defendant.

On June 22, 2021, agents made telephonic contact with Defendant, and he agreed to meet with agents the next morning at the Harding Ave address in Coolidge, Arizona. (Bates 091, ROI 3). When agents arrived the next morning, they again spoke with Ms. Martinez. Ms. Martinez stated that Defendant was not at the residence and did not live at the residence. Ms. Martinez stated that Defendant used her mailing address as his address, however he did not reside there, and has never lived at the residence.

Agents then visited the Coolidge address of Hope Martinez, sister to Anita Martinez, and aunt of Defendant. Agents asked Ms. Hope Martinez if she knew where Defendant resided and she stated No. Agents asked if she was aware of any other addresses where Defendant stayed, and she again stated No.

Of the 20 firearms purchased by Martinez in Counts 3 – 36, six have been recovered by law enforcement in the possession of other individuals. Three of the recoveries were in Mexico, and two were recovered at the DeConcini Port of Entry in Nogales, Arizona. On December, 13, 2021, an individual was arrested interviewed at the DeConcini POE after firearms and firearm parts were discovered in the wheel well of the vehicle he was driving while attempting to enter Mexico. (Bates 175, ROI 9, PSR para. 14). The vehicle the subject was driving was registered to Defendant's cousin. The subject identified "Omar" in his phone as the subject responsible for purchasing the firearms. (Bates 166, ROI 7).

Defendant has six documented border crossings with Mexico during the period

charged in the indictment. ((Bates 166, ROI 1).

On August 11, 2022, following the indictment, Agents learned that Defendant had purchased an additional 36 firearms between January 14, 2022, and March 22, 2022. (Bates 285, ROI 22). Defendant purchased the firearms from Liberty Arms in Tempe, Arizona in nine separate transactions. Thirty-four of the thirty-six firearms were AK-47 style rifles and pistols. In each of the nine transactions, Defendant identified his address as the Harding Ave residence in Coolidge, Arizona.

**II. Analysis.**

U.S.S.G. § 2K2.1(b)(1)(C) provides that a four-level enhancement is warranted if the offense involved 25 to 99 firearms that were "unlawfully possessed, including any firearm that a defendant obtained by making a false statement to a licensed dealer." U.S.S.G. §§ 2K2.1(b)(1)(C), 2K2.1 cmt. n.5. Under the Guidelines, the "offense" means "the offense of conviction and all relevant conduct under § 1B1.3." *Id*. § 1B1.1 cmt. n.1(I). As applicable here, "relevant conduct" includes "all acts and omissions committed ... or willfully caused by the defendant" "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id*. § 1B1.3(a)(1), (2).

Offenses are part of a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3 cmt. n.5(B)(i). Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. *United States v. Parlor*, 2 F.4th 807, 813 (9th Cir. 2021).

Firearm offenses may be grouped under the "relevant conduct" principles in § 1B1.3(a)(2). See U.S.S.G. § 3D1.2(d). Thus, "[w]hen a court determines the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (U.S.S.G. § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common scheme or plan." *United*

*States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998).

Here, defendant disputes the application of the six-level enhancement under U.S.S.G. § 2K2(b)(1)(C) because seven of the firearms would have otherwise been lawfully purchased had the undercover operation actually been a bona fide private sale. The government agrees.

The defendant further disputes the inclusion of the 20 firearms in Counts 2 – 36 because Defendant claims that he lived at the Harding Avenue address and he was not straw purchasing firearms. The government disagrees with this claim. As is clear from the statements of Defendant's aunt, Ms. Anita Martinez, she stated although Defendant used her mailing address as his own, he did not reside in her home and never has. She further stated that he did not have a bedroom in the home and none of his personal belonging were in the home. Agents visited the home on two separate occasions and Defendant was not present. In an interview with Ms. Hope Martinez, sister of Anita, and aunt of Defendant, she stated that she did not know where Defendant lived.

Six of the firearms purchased by Defendant have been recovered by law enforcement in the possession of other individuals. Five of those recoveries occurred in Mexico, or at the border attempting to enter Mexico. The individual attempting to enter those firearms into Mexico was driving a car belonging to Defendant's cousin and identified "Omar" as the person responsible for acquiring the firearms. As such, the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(A) for knowledge the firearms would be transported out of the United States is appropriate.

As detailed above, after this case was indicted on May 17, 2022, Agents learned of an additional 36 firearms defendant purchased over the same time-period of the conduct charged in the indictment. (Bates 285, ROI 22). In each of the transactions, Defendant falsely identified the Harding Ave address as his residence. As detailed above in the analysis, these 36 firearms should be included in the calculation as relevant conduct under U.S.S.G. § 1B1.3 as they were part of the same course of conduct or scheme as the offense of conviction under U.S.S.G. § 1B1.3(a)(2).

### III. Government's Sentencing Recommendation.

The government respectfully requests that the Court accept the parties 11(c)(1)(C) plea agreement. Albeit under a slightly different calculation, the government agrees with Probation's guideline calculation of a total offense level of 25, CHC I, for a sentencing range of 57 to 71 months of imprisonment. The plea agreement stipulates to a cap at the low-end of the guidelines.

The government agrees with Probation that a low-end, 57-month sentence is sufficient, but not greater than necessary to satisfy the 18 U.S.C. 3553(a) factors. This case involved the Defendant attempting to acquire fully automatic weapons. Defendant had already acquired a large quantity of AK-47 style semi-automatic weapons. It appears from the investigation that the vast majority of those firearms were destined for Mexico. However, given Defendant's young age, and lack of criminal history the government requests that this Court sentence the defendant to a low-end 57-month term of imprisonment, followed by a three-year term of supervised release.

Respectfully submitted this 22nd day of February, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Brett A. Day*
BRETT A. DAY
Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I hereby certify on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Ruben Iniguez, *Attorney for Defendant.*

*s/ Brett Day*
Brett A. Day
U.S. Attorney's Office

6